IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| KIMBERLY A. LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 14-1078-JWL** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits under sections 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 1381a and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.     Background

Plaintiff applied for SSI, alleging disability beginning July 31, 2001.  (R. 14, 141-47).  She exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  Plaintiff alleges the Administrative Law Judge (ALJ) erred in relying upon the Medical-Vocational Guidelines (grids) instead of using

the services of a vocational expert (VE), failed properly to consider her obesity in his

residual functional capacity (RFC) assessment, and erred in his credibility analysis.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052

(10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he

findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual

findings are supported by substantial evidence in the record and whether he applied the

correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than

a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S.

389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804

(10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that

of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the

determination whether substantial evidence supports the Commissioner's decision is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v.

Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the

3

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

The court finds no error as alleged by Plaintiff.  It addresses each error alleged, but

organizes its opinion in the order that the alleged errors would be reached in applying the

sequential evaluation process.

## II.    Consideration of Obesity in the RFC Assessment

Plaintiff acknowledges that the ALJ found that her obesity is a medically

determinable impairment, but argues that he failed to consider it in his RFC assessment,

and thereby failed properly to consider this impairment in his analyses at step four and

step five of the sequential evaluation process.  Plaintiff argues that the ALJ's entire

analysis of obesity appears in the decision at step two of the evaluation process, and is

merely boilerplate language.  She argues that contrary to the requirements of Social

Security Ruling (SSR) 02-1p, the ALJ erroneously failed to provide a discussion of the

effects of obesity on her severe impairments.  She notes that the regulations recognize

that the effect of obesity in combination with another impairment may be greater than the

effect of each impairment individually, and argues that for this reason "the SSA [(Social

Security Administration)] has instructed ALJs to consider obesity throughout the

disability process and explain any related findings."  (Pl. Br. 12) (citing 20 C.F.R. Pt. 404,

Subpt. P, App. 1 § 1.00(Q); and SSR 02-1p).

The Commissioner argues that the ALJ's RFC assessment adequately accounted

for Plaintiff's obesity.  She argues that the ALJ restricted Plaintiff to sedentary work

4

because he gave her the benefit of the doubt regarding the physical limitations resulting from her obesity.  She argues that even though the ALJ's written analysis of Plaintiff's obesity was contained within his step two analysis, there is no requirement that particular portions of the analysis be included in certain portions of the decision.  The record evidence supports the RFC assessment, there is no record evidence of limitations resulting from Plaintiff's obesity, and Plaintiff points to no such evidence.

As Plaintiff asserts, the regulations and SSR 02-1p require that an ALJ must consider obesity and must consider all impairments in combination "throughout the disability determination process."  20 C.F.R. § 416.923; see also, generally, SSR 02-1p, West's Soc. Sec. Reporting Serv., Rulings 251-61 (Supp. 2014).  Moreover, SSR 02-1p explains how obesity must be considered in a disability determination, and how it must be considered in combination with other impairments.  Contrary to Plaintiff's assertions otherwise, while there is a requirement that obesity be considered and that it be considered in combination with other impairments, there is no requirement that it be discussed in a particular manner or at a particular time in a disability decision.  SSR 02-1p requires that obesity be considered in determining whether an individual has a medically determinable impairment, whether the individual's impairments are severe, whether the individual's impairments meet or equal the requirements of a listed impairment, and whether the individual's impairments prevent her from doing past relevant work or any other work in the economy.  West's Soc. Sec. Reporting Serv., Rulings 253-54 (Supp. 2014).

Here, there can be no doubt that the ALJ considered whether obesity is a medically determinable impairment and whether it is severe, because the ALJ specifically found that it was a medically determinable impairment but that it was not severe.  (R. 16). Moreover, he stated that "[t]he effects of the claimant's obesity have been considered when determining a residual functional capacity for the claimant."  Id.

As the Commissioner points out, a court will usually take a lower tribunal at its word when it says it has considered a matter.  Hackett, 395 F.3d at 1172-73 (10th Cir. 2005).  It will not depart from that practice absent sufficient justification in the record to do so.  Id.  Plaintiff provides no justification on this record.

With regard to the step three determination whether Plaintiff's condition meets or equals a listed impairment, the ALJ stated that Plaintiff's condition does not meet or equal a listed impairment, Plaintiff does not point to a listed impairment which is met or equaled, and does not suggest evidence which would support such a finding, and the court does not find any such evidence.  It finds no error at step three.

Regarding RFC assessment and the step four and five findings, the ALJ stated he had considered Plaintiff's obesity in making that determination, and Plaintiff identifies no error in that regard.  Plaintiff cites Hamby v. Astrue, 269 F. App'x 108, 112 (10th Cir. 2008) for the proposition that the ALJ was required to, but did not, provide a discussion of the effect of obesity on Plaintiff's severe impairments, and cites Dewitt v. Astrue, 381 F. App'x 782, 785-86 (10th Cir. 2010) for the proposition that nothing in the decision indicates how obesity influenced the ALJ in assessing RFC.  The court notes that both of

6

the cases cited by Plaintiff are unpublished opinions and are not precedent binding on this court other than as they are persuasive in the circumstances before the court.  Both of the cases cited relied upon SSR 02-1p's <u>recognition</u> that obesity in combination with other impairments may <u>or may not</u> increase the severity of functional limitations, and its <u>requirement</u> that the agency will not make assumptions about the severity or functional effects of obesity but will evaluate each case based on evidence in that case record. <u>Dewitt</u>, 381 F. App'x at 785; <u>Hamby</u>, 269 F. App'x at 112.  However, each case reads into the Ruling a <u>discussion</u> requirement which, as noted above, is not there.  Moreover, the cases cited by Plaintiff may be distinguished from the circumstances presented here.

In <u>Hamby</u>, the court found that "the ALJ failed to give adequate consideration to the effect of [the plaintiff's] obesity in combination with her other severe impairments," and made <u>assumptions</u> about the severity or functional effects of obesity combined with other impairments.  269 F. App'x at 112.  In <u>Dewitt</u>, the court noted that the ALJ had relied on the medical opinion of a physician whom the ALJ mistakenly believed had identified obesity as one of the plaintiff's impairments when in fact the physician had not done so.  381 F. App'x at 785.  Here, the court finds that the ALJ provided adequate consideration of obesity in combination with Plaintiff's other impairments, did not make assumptions regarding the severity or functional effects of Plaintiff's combination of impairments and did not erroneously rely upon an incorrect medical opinion, and that the decision adequately reveals how the ALJ considered obesity in combination with the other impairments when assessing RFC.

Contrary to Plaintiff's assertion that the ALJ provided no discussion of the effect of obesity on her severe impairments, the decision reveals otherwise.  As the Commissioner notes, the ALJ stated that he had provided Plaintiff the benefit of the doubt and limited her to sedentary work.  Moreover, in context, the benefit of the doubt given to Plaintiff was as a result of her obesity.  Here is the ALJ's discussion giving Plaintiff the benefit of the doubt, and explaining the weight accorded the medical opinions:

> The undersigned [ALJ] also noted that there is little medical evidence in the claimant's record, which documents that the claimant sought or obtained ongoing treatment for her impairments.  The claimant's mental health records reflect that she visited the Jim Taliaferro Community Mental Health Clinic a total of 6 times from October 2010 through April 2012 and she only received medication refills to manage her mental impairments.  The claimant's medical records also reflect very infrequent visits for treatment for her alleged impairment of chronic pain.  Notwithstanding the lack of medical evidence, the undersigned nonetheless afforded the claimant the benefit of the doubt regarding his [sic] allegations that the claimant's impairments are severe in nature.  However, the overall lack of objective evidence precludes the undersigned from issuing a determination that the claimant suffers severe physical limitations stemming from these possible conditions.
>
> As for the opinion evidence, the undersigned gave great weight to the State psychological experts, as their opinions were based upon, and therefore are consistent with, the medical evidence as a whole.  The undersigned did not give weight to the State medical experts even though their opinions that the claimant's physical impairments were non-severe were reasonably based upon the lack of medical evidence in the claimant's file.  However, as discussed above, the undersigned found the claimant's physical impairments to be severe because at the hearing, the claimant appeared to be credible.  The undersigned noted that none of the claimant's treatment providers ever documented that the claimant was disabled or had limitations or restrictions in her ability to work due to her impairments or symptoms stemming from those impairments.

> The undersigned gave great weight to Dr. Miller in his opinion regarding the claimant's physical limitations; however, little weight was given to his opinion regarding the claimant's mental impairments (Exhibit 3F/3 [R. 314]), as he is not a mental health specialist.  Additionally, I noted that Dr. Miller because [sic] based his opinion exclusively upon the claimant's self report because he was never provided any of the claimant's treatment records to review as part of his consultative examination.

(R. 23).

The ALJ noted that there was little medical evidence of ongoing treatment--that there was evidence of mental health treatment six time between October 2010 and April 2012, but that there were "very infrequent visits" for her physical treatment.  Id.  He noted that notwithstanding this lack of treatment for physical impairments, he gave Plaintiff the benefit of the doubt regarding severe physical impairments, but nonetheless was unable to assess severe physical limitations from her physical impairments.  Id.  In the very next paragraph he distinguished between the state psychological experts (who provided mental RFC assessments) and the state medical experts (who provided physical RFC assessments)--according great weight to the opinions of the former and no weight to the opinions of the latter.  Id.  He then explained that he had given Plaintiff the benefit of the doubt regarding physical impairments because she appeared credible in that regard at the hearing, but he noted than none of the treating healthcare providers "documented that the claimant was disabled or had limitations or restrictions in her ability to work due to her impairments or symptoms."  Id.  Finally, the ALJ distinguished between Dr. Miller's opinion regarding physical limitations and his opinion regarding mental limitations and accorded great weight to the former and little weight to the latter.  Id.  He explained that

he did this because Dr. Miller is not a mental health specialist, and had nothing beyond Plaintiff's self-report upon which to bases his opinion regarding mental limitations.  Id.

In his step two evaluation of Plaintiff's impairments, the ALJ found that Plaintiff had severe mental impairments, and had a medically determinable physical impairment of obesity, but that it was not severe.  He mentioned no other physical impairments, and the court finds no evidence of additional physical impairments in the record.  While the ALJ acknowledged Plaintiff's "alleged impairment of chronic pain," he did not find that to be a medically determinable impairment in the circumstances of this case, Plaintiff does not allege that was error, and the court does not so find.  The only physical symptom mentioned in Dr. Miller's examination report was Plaintiff's report of pain to her right ankle (R. 313), and the only physical impairment assessed by Dr. Miller was "obesity." (R. 314).  Thus, Dr. Miller concluded that Plaintiff's reported ankle pain is a symptom resulting from her obesity.  And, the ALJ accorded great weight to Dr. Miller's opinions regarding physical impairments.  In context, it is clear that the ALJ found that Plaintiff's obesity is not severe within the meaning of the Act and the regulations, but he gave Plaintiff the benefit of the doubt in finding her related physical limitations are severe and, therefore, she should be restricted to sedentary exertional work.  Although it would have been better for the ALJ to have made this determination explicitly clear, what is required is that the court be able to follow his rationale, and that standard has been met here . Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).  There is no error in the ALJ's evaluation of Plaintiff's obesity.

### III.   The Credibility Determination

Plaintiff claims the ALJ erred in his credibility determination because he utilized boilerplate language, because although he allegedly gave great weight to the opinions of the state agency psychological experts he failed to explain why he rejected their opinion that Plaintiff's allegations concerning her mental impairments were credible, and because he failed to adequately explain which parts of her testimony he believed, and which parts he found not credible.  The Commissioner argues that the ALJ identified and discussed a number of reasons he discounted the credibility of Plaintiff's allegations of disabling symptoms, and that those reasons are legally valid and supported by substantial evidence. She argues that Plaintiff has not identified record evidence contrary to the ALJ's credibility determination and that although the ALJ did not adopt the psychological experts' opinion that Plaintiff's allegations are credible, he is required to assess a claimant's credibility himself based on all of the record evidence.

#### A.   Standard for Evaluating Credibility

The court's review of an ALJ's credibility determination is deferential, and it is generally treated as binding on review.  <u>Talley v. Sullivan</u>, 908 F.2d 585, 587 (10th Cir. 1990); <u>Broadbent v. Harris</u>, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  <u>Wilson</u>, 602 F.3d at 1144; <u>accord</u> <u>Hackett</u>, 395 F.3d at 1173.  The framework for a proper credibility analysis is set out in <u>Luna v. Bowen</u>, 834 F.2d 161 (10th Cir. 1987).  An ALJ must consider (1) whether the

claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. See, Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework).  The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii). The court has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner.  Luna, 834 F.2d at 165-66.  They include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

### B.    The ALJ's Credibility Analysis

The ALJ set out the legal standard for a credibility determination, both as expressed in the regulations, and as expressed by the Tenth Circuit in Luna.  (R. 20-21).

He then summarized Plaintiff's allegations of symptoms resulting from her impairments as reported in her Adult Disability Report (R. 185), her Adult Function Report (R. 202-03), her testimony at the hearing, and the medical evidence.  (R. 21-22).  He found that Plaintiff's medically determinable impairments could reasonable be expected to produce symptoms as alleged, but he found that Plaintiff's allegations regarding the severity of her symptoms are not credible.  (R. 23).  He discounted her allegations because she had sought little ongoing treatment for her mental impairments, and very infrequent visits for her physical complaints.  Id.  He found that her hearing testimony regarding her physical impairments was credible, and gave her the benefit of the doubt that she was limited to sedentary work even though he could not find obesity to be a severe impairment in the circumstances of this case.  Id.

### C.    Analysis

Although the ALJ used boilerplate language in his decision, the court finds that he properly made and explained his credibility determination.  The mere use of "boilerplate" language is not a basis to reject an opinion, for if it were many of this court's opinions would be rejected for using such a time-saving device in discussing and analyzing common issues in certain cases.  With regard to the ALJ's alleged failure to identify the allegations he disbelieved, and why, the court is unable to ascertain the basis for this argument.  As discussed repeatedly herein, the ALJ noted that he believed Plaintiff's allegations regarding her physical limitations to the extent that he found her limited to sedentary work, but that he discounted her allegations regarding her mental impairments

13

to the extent that she alleged they required greater limitations than could be

accommodated by limitations to simple, repetitive work involving only one to two step

instructions, and an inability to interact with the public.  Plaintiff does not demonstrate

that greater detail is necessary.

Finally, Plaintiff's assertion that the ALJ erred in according substantial weight to

the opinions of the state psychological experts without explaining why he rejected their

opinion that Plaintiff's allegations regarding her mental impairments were credible

misunderstands both the role of the ALJ, and the law regarding medical opinions.

"Medical opinions" are defined in the regulations as "statements from physicians and

psychologists or other acceptable medical sources that reflect judgments about the nature

and severity of [a claimant's] impairment(s), including [that claimant's] symptoms,

diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the

claimant's] physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).

Although medical opinions may not be ignored by an ALJ, id. § 416.927(c), and he

must explain why he did not adopt a medical source opinion which conflicts with the

RFC assessed, SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 150 (Supp. 2014),

the same cannot be said about opinions regarding the credibility of a claimant's

allegations.  Such opinions are simply not medical opinions.  They do not in any way

relate to the nature and severity of the claimant's impairments, or to symptoms,

diagnoses, prognosis, capabilities, or limitations.  Moreover, it is the ALJ's duty to

independently evaluate the credibility of a claimant's allegations, and the regulations

14

provide a procedure to carry out that evaluation.  20 C.F.R. § 416.929; see also Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987) (holding that the Social Security regulations regarding credibility evaluation, as properly understood, are valid).  While a credibility evaluation must consider all of the record evidence, the opinion of anyone other than the ALJ regarding credibility is given no special preference or consideration.  SSR 96-7, West's Soc. Sec. Reporting Serv., Rulings 133-42 (Supp. 2014).  Giving the ALJ's credibility determination the deference it is due, Plaintiff has shown no error therein.

## IV.    Use of the Grids Instead of a Vocational Expert

Plaintiff claims the ALJ erred by using the grids as a framework without also using the services of a vocational expert.  (Pl. Br. 6).  She argues that the authorities cited by the ALJ do not apply in this case.  That SSR 85-15 applies only to cases in which the claimant has solely nonexertional limitations, that the ALJ's finding that Plaintiff cannot interact with the public excludes reliance on SSR 83-14, and that SSR 83-12 provides no insight into a situation where the claimant cannot interact with the public.

The Commissioner argues that an ALJ may apply the grids as a framework and use either a vocational expert's testimony or other admissible vocational resources which demonstrate the effect of a claimant's nonexertional impairments on the occupational base at issue.  She argues that the ALJ properly determined that a limitation to work which is simple, repetitive, and requires only one or two step instructions is within the basic mental demands of competitive, remunerative, unskilled work, and therefore has no impact on the sedentary, unskilled occupational base.  (Comm'r Br.. 12).  She points out

that contact with the general public is not a basic mental demand of competitive, remunerative, unskilled work, and argues that therefore a restriction from interaction with the general public would have no impact on the sedentary unskilled occupational base.  In support of this argument she points to the principle that "unskilled jobs [as] represented in the Grids 'ordinarily involve dealing primarily with objects, rather than data or people.'" (Comm'r Br. 12-13) (quoting SSR 85-15, 1985 WL 56857 at *5; and citing Conkle v. Astrue, 487 F. App'x 461, 462-63 (10th Cir. 2012)).  She argues that the ALJ's determination in this regard is reasonable and supported by the rulings and regulations.

### A.      Standard for Using the Grids

Plaintiff's Brief identifies the correct standard for the use of the grids and vocational resources in deciding whether there is work available in the economy which a claimant may perform.  (Pl. Br. 5).  In the grids, the Commissioner has provided a tool to aid in making uniform, efficient decisions in determining the types and numbers of jobs existing in the economy for certain classes of claimants.  Heckler v. Campbell, 461 U.S. 458, 468 (1983).  However, the grids are applicable "only when they describe a claimant's abilities and limitations accurately."  Id. 461 U.S. at 462 n.5; see also, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).  Because the grids are based upon the physical exertion requirements for work, they may not be fully applicable for claimants who have nonexertional limitations.  Channel, 747 F.2d at 580.  Realizing this limitation on the use of the grids, the Commissioner has promulgated a procedure for evaluating claims where both exertional and nonexertional impairments are present:

16

(2) [W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.

20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(e)(2); Channel, 747 F.2d at 580-81.

The grids direct a finding in a particular case only when there is an "exact fit" between the criteria of the grid and the situation before the ALJ. Campbell, 461 U.S. at 468; Channel, 747 F.2d at 579. Where the grid rules do not direct a finding, "full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations which will provide insight into the adjudicative weight to be accorded each factor." 20 C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(e)(2); see also Channel, 747 F.2d at 579-82 (application of the grids where nonexertional limitations are present).

Where a plaintiff is unable to do a full range of work in an exertional category, the ALJ may not conclusively apply the grids, Channel, 747 F.2d at 582 (error to apply the grids absent a finding that plaintiff could perform the full range of sedentary work), but, he "must give 'full consideration' to 'all the relevant facts,' App. 2, § 200.00(e)(2), including expert vocational testimony if necessary, in determining whether [plaintiff] is or is not disabled." Channel, 747 F.2d at 583. Where nonexertional limitations affect the range of work of which a plaintiff is capable, the grids may serve only as a framework to

17

assist in determining whether sufficient jobs exist in the national economy given plaintiff's limitations and characteristics.  Gossett, 862 F.2d at 806.

But, "[T]he mere presence of a nonexertional impairment does not automatically preclude reliance on the grids.  Use of the grids is foreclosed only '[t]o the extent that nonexertional impairments further limit the range of jobs available to the [plaintiff].'" Channel, 747 F.2d at 583, n.6 (quoting Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983)).  Thus, use of a vocational expert is required only where plaintiff's nonexertional impairments cause a limitation on the range of work available in a particular occupational base and where no other evidence (either in the record or in occupational resources of which the Commissioner may take administrative notice, see 20 C.F.R. § 416.966(d)) establishes that a significant number of jobs are available.  Where the grids establish that a significant number of jobs exist in the economy, the Commissioner need not introduce evidence of specific available jobs.  Campbell, 461 U.S. at 468-70.

## B.    The ALJ's Step Five Evaluation

At step five of the sequential evaluation process, the ALJ determined that a significant number of jobs exist that Plaintiff can perform.  (R. 24) (finding number 9). Therein he first summarized the applicable rules for applying the grids.  Id. (citing SSR 83-11, SSR 83-12, SSR 83-14, SSR 85-15, and 20 C.F.R. PT. 404, Subpt. P, App. 2 § 204.00).  He then explained his application of those rules in this case:

> If the claimant had the residual functional capacity to perform the full range
> of sedentary work, considering the claimant's age, education, and work
> experience, a finding of "not disabled" would be directed by Medical-

Vocational Rule 201.27.  However, the additional limitations have little or no effect on the occupational base of unskilled sedentary work.  A finding of "not disabled" is therefore appropriate under the framework of this rule.

(R. 24).

C.      **Analysis**

It is the ALJ's finding that "the additional limitations have little or no effect on the occupational base of unskilled sedentary work," to which Plaintiff objects.  She argues that there is no basis in the record or in the occupational resources of which the ALJ may take administrative notice to support this finding, and it is therefore error for the ALJ to make that finding without seeking the assistance of a vocational expert.

As discussed at length above, it was Plaintiff's physical impairment of obesity for which the ALJ gave Plaintiff the benefit of the doubt and limited her to sedentary work.  Therefore, the "additional limitations" to which the ALJ was referring in this finding were the limitations to simple, repetitive work which requires only one or two step instructions, and which does not require interaction with the general public.

The ALJ's responsibility then, since he determined that Plaintiff has both exertional and nonexertional (mental in this case) limitations was to determine whether the "nonexertional impairments further limit the range of jobs available to the [plaintiff]." Channel, 747 F.2d at 583, n.6; see also, 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(e)(2) ("consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations").  As the Commissioner points out, SSR 85-15 provides that

19

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

1985 WL 56857 at *4.  The limitation to simple, repetitive work requiring only one or two step instructions fits comfortably within this vocational rule, and that limitation clearly does not eliminate any of the sedentary, unskilled occupational base.  Plaintiff can show no error here.  As Plaintiff points out, SSR 85-15 explains the use of the grids as a framework for evaluating solely nonexertional impairments.  (Pl. Br. 6).  Because Plaintiff has both exertional and nonexertional limitations, that Ruling does not provide the framework for deciding this case.  Nonetheless, that fact does not mean that vocational information contained within the Ruling may not be relevant to this case.  The quotation above from SSR 85-15 provides information regarding the basic mental demands of competitive, remunerative, unskilled work which is properly applied to the sedentary, unskilled occupational base at issue here.  Plaintiff's argument to the contrary is unavailing.  The case cited by Plaintiff in support of her argument does not require otherwise.  In a footnote in that case, the court noted that SSR 85-15 applies only when a claimant has nonexertional limitations and refused to apply that Ruling, but it then applied SSR 83-14 to affirm the Commissioner's decision.  Lippert v. Barnhart, 63 F. App'x 260, 267 & n.2 (10th Cir. 2003).  That case did not explain whether the Commissioner was relying on vocational information contained in SSR 85-15, and it says

20

nothing regarding whether vocational information provided in one SSR might properly be used in a different situation.  Id.

The ability to interact with the general public is not a basic mental demand of competitive, remunerative work as discussed above, so the limitation to work which does not require such interaction does not preclude all work in the unskilled, sedentary occupational base.  However, that information alone is insufficient to determine how that limitation affects the sedentary, unskilled occupational base.  The Commissioner argues that that limitation would also have no impact on the sedentary, unskilled occupational base because it is not a basic demand of competitive, remunerative work and because "the unskilled jobs represented in the Grids 'ordinarily involve dealing primarily with objects, rather than data or people.'" (Comm'r Br. 12-13) (quoting SSR 85-15, 1985 WL 56857, at *4; and citing Conkle, 487 F. App'x at 462-63).  The Commissioner is correct that the Ruling reveals that the unskilled jobs represented in the grids ordinarily involve dealing primarily with objects, not data or people.  Thus, an inability to interact with the general public (as opposed to supervisors or coworkers) would have little impact on the unskilled, sedentary occupational base.  Plaintiff points to no vocational rule which suggests a contrary decision.  Moreover, the Tenth Circuit, in Conkle, applied this very principle in a case where the claimant was limited to no more than incidental contact with the general public, and held that "because Ms. Conkle could still perform a substantial majority" of work in the applicable occupational base, the ALJ appropriately used the grids in deciding she was not disabled.  487 F. App'x at 462-63.

This is a close case, and perhaps it would have been the better course here for the ALJ to seek vocational expert testimony.  This case likely represents the limits to which an ALJ might properly go in applying the grids rather than seeking the opinion of a vocational expert in a case where the claimant has both exertional and nonexertional limitations.  Nevertheless, applying the appropriate standard of review, the court finds that Plaintiff has not met her burden to show error in the Commissioner's decision.  Therefore, that decision must be AFFIRMED.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 6<u>th</u> day of April 2015, at Kansas City, Kansas.


<u>s:/ John W. Lungstrum</u>
**John W. Lungstrum**
**United States District Judge**